## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**GREEN EDUCATION FOUNDATION**,
a California nonprofit corporation,

      Plaintiff,

                                 Hon.

v.                                   Case No.

**CITY OF DENTON**,
a Texas municipal corporation,

      Defendant.

---

### Verified Complaint

NOW COMES the Plaintiff, Green Education Foundation, and for its verified complaint against Defendant, City of Denton, Texas, alleges as follows:

### Parties

1.      Plaintiff Green Education Foundation (hereinafter "GEF" or "Plaintiff") is a 501(c)(3) nonprofit corporation with its principal place of business in San Jose, California.

2.      GEF is committed to creating a sustainable future through education by providing Pre K-12 education programs. GEF receives financial support through, among other things, donations that are placed in freestanding donation receptacles in cities throughout the State of Texas and nationwide. The donation receptacles collect various items including, but not limited to, clothes, shoes, and books.

3.      Defendant City of Denton (hereinafter "City" or "Defendant") is a chartered municipal corporation existing under the laws of the State of Texas, located within the County of Denton.

4.      The City of Denton, Texas has banned charitable donation bins.  As a result, the actions taken by the City of Denton violate the Free Speech clause of the United States and State of Texas Constitutions.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 USC § 1343(a)(3), in that it is brought to redress constitutional violations and deprivations of law under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 42 USC § 1983, which provides causes of actions for the protection of civil and constitutional rights and damages; and under 42 USC § 1988, to secure costs and reasonable attorney fees as part of the case. This Court has supplemental jurisdiction over Plaintiff's Texas constitutional claims asserted herein as those claims form part of the same case or controversy as the federal questions asserted herein, pursuant to 28 USC § 1367(a).

6.      The venue in this action is proper within the Eastern District, Sherman Division of Texas pursuant to 28 U.S.C. § 1391(b), in that (i) Plaintiff owns and occupies property within this judicial district; (ii) Defendant is situated within this judicial district; and (iii) all of the claims asserted by Plaintiff arose within this judicial district.

**Factual Allegations**

7.      Plaintiff GEF is a California non-profit charitable organization committed to creating a sustainable future through education. GEF aims to identify key factors and impediments influencing sustainable education, evaluate existing approaches, and develop effective educational materials and programs to promote behavior change towards sustainable practices. ***Exhibit 1***, Mission Statement.

8.      GEF provides curriculum and resources to K-12 students and teachers worldwide with the goal of challenging them to think holistically and critically about global environmental concerns and solutions. ***Ex. 1***.

9.      To facilitate GEF's sustainable future goals, it solicits and collects charitable donations of various goods, including clothing, shoes, books, toys and household items through unattended Conex containers referred to as "Neighborhood Donation Recycling Stations" ("NDRSs"). ***Exhibit 2***, NDRS Operational Overview.

10.     GEF benefits from the donated items collected at its NDRSs the bins by selling the goods and distributing the revenue within its non-profit organization to fund educational programs throughout the nation.  Below is a photograph of a NDRS:



11.     GEF's NDRSs are pre-built, non-permanent structures made from refurbished 20 foot by 8 foot shipping containers. *Ex. 2* at 2.

12.     GEF uses pre-built and pre-used structures for its NDRSs in order to minimize the effects of new construction on natural resources. *Id.*

13.     All NDRSs are 100% powered by solar panels, equipped with LED lighting, a touch screen, and 24-hour camera surveillance that has a 360-degree view and LED lighting, and include an overflow bin. *Id.* at 1-2.

14.     GEF places its NDRSs on private property in high traffic volume areas like shopping centers and malls in order to be easily visible and accessible by individuals looking to deposit donated items. *Id.* at 2.

15.     Prior to placing a NDRS at any private location, GEF officials contact the property owner or manager and obtain written permission to place the NDRS at that particular private property.

16.     All of GEF's NDRSs are clearly labeled as belonging to GEF and contain contact information for anyone to contact GEF representatives for any reason.

17.     GEF representatives visit each NDRS on a daily basis in order to collect the donated goods and to avoid bin overflow and goods accumulating outside the containers. *Id.* at 1-2.

18.     The NDRSs are also monitored via live cameras 24 hours a day by GEF security. *Id.* at 2.

19.     However, if donations begin to accumulate outside a NDRS before GEF officials can service the NDRS, anyone can contact GEF and inform it of the overflow by using the clearly provided contact information on the NDRS.

20.     GEF has a maximum response time of 3 hours if it receives a call regarding NDRS overflow. *Id*. at 1.

21.     Currently, GEF has approximately 85 NDRSs placed around the states of Texas, California, Florida, Oregon, and Washington.

**The Denton Development Code**

22.     The Denton Development Code ("DDC") does not contain a provision that directly regulates outdoor, unattended charitable donation bins.

23.     However, the DDC contains a Section that explicitly governs the permitting procedure for "special waste and recyclables haulers" in the City. ***Exhibit 3***, DDC § 24-69.

24.     Under Section 24-69, any person who desires to "collect or remove for compensation from any property within the city any special waste or recyclables" can apply for a special waste hauler's permit. *Id*. § 24-69(a).

25.     The DDC defines "recyclables" as "glass, tin, aluminum, paper, newspaper *or other discarded materials*, which are not special waste and have been separated from other municipal solid waste at the point of collection for delivery to another location for processing for reuse." *Id*. § 24-90(c) (emphasis added).

26.     The DDC also provides that "[n]othing in this chapter shall prohibit a person from collecting, gathering, or transporting recyclable materials collected from property within this city." *Id*. § 24-90(a).

**GEF Applies for a Permit to Operate a NDRS in the City**

27.     In June 2014, GEF first contacted the City to inquire about placing a NDRS in the City.

28.     On June 20, GEF representative Mike Schuster provided City employee Ruth Walters with information regarding GEF and its charitable efforts. *Exhibit 4*, 6/20/14 Email Chain.

29.     Ms. Walters forwarded GEF's email to the City's Pretreatment Program Manager Heather Goins to assist GEF in obtaining the necessary permits. *Id.*

30.     Ms. Goins also forwarded the email to Stewart White, the City's Transportation Permit Specialist. *Id.*

31.     Mr. White provided GEF with the necessary documents to obtain a Waste Hauler Permit from the City. *Id.*; *see Ex. 3* § 24-69.

32.     On June 26, GEF employee Kayla Ybarra and Mr. Stewart corresponded via email regarding the permit application process and fee schedule. *Exhibit 5*, 6/26/14 Emails.

33.     Thereafter, GEF completed and submitted its application. *Exhibit 6*, 2014 Permit App.

***The City Issues, then Unilaterally Revokes, GEF's Permit to Operate a NDRS***

34.     On July 3, 2014, the City's Transportation Permit Specialist Stewart White provided GEF employee Kayla Ybarra with Collection and Transportation Services Permit No. 14-136 ("Permit") and all required stickers needed to operate a NDRS for the 2014 calendar year. *Exhibit 7*, 7/3/14 Permit and Letter.

35.     The Permit authorized GEF to place a NDRS at the Denton Crossing shopping center at 1800 S. Loop 288, Denton, Texas 76205 ("Property"). *Ex. 6* at 2-3.

36.     The Permit was valid through December 31, 2014. *Ex. 7.*

37.     On August 20, GEF received an email from Ms. Goins stating the City had

been "unaware of the fact that those type of recycling containers are not allowed by City code. For this reason, we are required to revoke the permit." ***Exhibit 8***, 8/20/14 Email.

38.     After the City unilaterally revoked GEF's Permit, it allowed GEF to keep the NDRS at the Property through the end of 2014.

39.     At the City's demand, GEF removed the NDRS at the Property on January 8, 2015.

***The City Works to Permanently Bar GEF from Operating a NDRS in the City***

40.     GEF was skeptical if the City would allow it to renew its Permit to operate the NDRS for the 2015 calendar year, but still chose to apply in the hopes the City would change their view on NDRSs and approve GEF's application.

41.     Per City procedure, GEF began the application process in November 2014to apply for a Permit for the following year.

42.     At this time, GEF's NDRS at the Property was still operating.

43.     On November 25, 2014, Ms. Ybarra contacted Mr. White regarding renewing the Permit for 2015. ***Exhibit 9***, 11/25/14 Emails.

44.     Ms. Ybarra sent follow-up emails on November 26 and December 1. ***Id***.

45.     Mr. White did not reply to any of the three emails. ***Id***

46.     On December 1, City Attorney Lucky Crumpler emailed Lancine Bentley, the City's Community Improvement Services Manager, about GEF. ***Exhibit 10***, 12/14 Emails at 3.

47.     City Attorney Crumpler indicated the City's Wastewater Collection Division, which had previously issued GEF its permit, took the "position…that they are

not interacting with [GEF] or its representatives, but are instead leaving the matter up to CIS [Community Improvement Services]."). *Id*.

48.     City Attorney Crumpler also made mention of "the original erroneous permit." *Id*.

49.     On December 3, CIS Supervisor Todd Varner emailed City Attorney Crumpler stating he had spoken with RPAI and informed them the City's Legal Department has no agreement with GEF to operate a NDRS. *Id*.

50.     Mr. Varner also stated he informed RPAI that GEF had re-applied for a Permit and "the request would be denied." *Id*.

51.     Mr. Varner further informed City Attorney Crumpler that "[d]espite the fact that the permit that was issued has been revoked…[w]e have agreed to allow the time to run and expect the donation box to be removed by the first week of January." *Id*.

52.     On December 10, an RPAI employee informed the City that GEF had agreed to move its NDRS to another city on December 31. *Id.* at 2.

53.     One day later, on December 11, Ms. Ybarra submitted the renewal application to Mr. White as well as the City's Planning Department. *Ex. 9* at 1; *Exhibit 11*, 2015 Permit App.

54.     On December 12, Ms. Goins emailed Ms. Ybarra and notified her that "I was notified on Wednesday that RPAI [Property Management Company] and Green Education Foundation have agreed to move the container to another city by 12/31/2014. For that reason, we will not process the submitted application at this time." *Ex. 9* at 1.

55.     On December 20, GEF Chairwoman Charlene Nijmeh sent a letter to Ms. Goins in response to Ms. Goins' December 12 email. *Exhibit 12*, 12/20/14 Letter.

56.     Ms. Nijmeh informed Ms. Goins that GEF "does not agree nor ever had agreed to move our 'container' from our current permitted location in the City of Denton." *Id*.

57.     Ms. Nijmeh further clarified that GEF did not want to relocate outside of the City, nor did it want to withdraw its renewal application. *Id*.

58.     Ms. Nijmeh concluded with requesting the City process the renewal application as quickly as possible. *Id*.

59.     No GEF official had spoken with anyone from RPAI Property Management Company and agreed to remove its NDRS from the City.

60.     On December 23, an RPAI employee emailed a GEF representative stating its "property manager does not wish to make waves with the city of Denton and has told them that the container will be removed by 1/1/14 (sic)." ***Ex. 10*** at 1.

61.     The RPAI employee further stated "[i]f GEF wants to fight Denton we want to stay out of it." *Id*.

62.     Based on the City's demand, GEF removed its NDRS from the Property on January 8, 2015.

63.     At that point, GEF had no NDRSs in the City.

64.     GEF had no additional contact with the City through the remainder of 2015.

***The City Informs GEF of a New Policy that Completely Bans Donation Bins***

65.     The DDC does not contain a provision that directly addresses or regulates outdoor, unattended donation bins. *See **Ex. 3***.

66.     On April 25, 2016, GEF Chairwoman Charlene Nijmeh sent a letter to the

City inquiring about the process to obtain a permit to operate a NDRS in the City. *Exhibit 13*, 4/25/16 Letter.

67.     Ms. Nijmeh asked five questions in her letter:

a.  "Do you have a specific ordinance for donation boxes in Denton?

b.  If not, Do you have a specific ordinance banning donation boxes?

c.  If you do have a donation box ordinance, how many donation boxes do you currently have permitted under this ordinance?

d.  Do you know how many donation boxes are currently operating in Denton? (Permitted or not)

e.  Do you have other non-profits such as Goodwill, Salvation Army, or other thrift store operators in the City of Denton collecting used clothing donations in trailers? Brick-n-mortar locations? Or any other means?" *Id.*

68.     Ms. Nijmeh also explained GEF's maintenance and surveillance procedures at its NDRSs in an effort to alleviate concerns the City might have about blight or nuisance conditions. *Id.*

69.     One month later, on May 25, 2016, the Deputy City Attorney Michael Copeland responded via email to Ms. Nijmeh's letter. *Exhibit 14*, 5/25/16 Email.

70.     In response to Ms. Nijmeh's five questions cited above, Mr. Copeland responded as follows:

a.  "No.

b.  No.

c.  0.

d.  Yes, 0.

e.  No. No. 'Or any other means' is ambiguous." *Id.*

71.     According to the City Attorney, the DDC "does not specify or permit unmanned and/or temporary donation locations. In other words the requested use (a

recycling drop-off facility) which I understand that your agency has in mind, is not an allowed land use in Subchapter 5 of the Denton Development Code." ***Id***.

72.     The City Attorney further informed GEF the City has a policy that completely bans outdoor, unattended donation bins in the City ("Policy"). According to the City Attorney, "[t]he Planning Department is operating within the provisions of the Denton Development Code regulations in disallowing portable recycling containers to be placed or stored upon private property." ***Id***.

73.     The City Attorney justified the Policy's outright ban on donation bins by stating "such containers are an accessory structure or use, or they are for a temporary use which bears no relationship to the principal use of the property upon which they are placed." ***Id***.

74.     The City Attorney also stated the Permit the City issued GEF in 2014 "was issued, purely in error, by a new employee of the Solid Waste Department." ***Id***.

75.     The City Attorney further touted the City's apparent longstanding actions against donation bins, including "eliminat[ing] approximately 35 recycling collection containers from private property in the City" over the past seven years. ***Id***.

76.     Finally, the City Attorney indicated the City has "consistently informed all other persons or entities requesting a permit that the requested use is not allowed by the City of Denton" and as such, the City "must decline your Foundation's offer of a temporary recycling box/facility to be placed on private property within the City." ***Id***.

77.     While the NDRS was in place in the City, it collected a total of 61,222 pounds of donated items. The monthly breakdown of the collections is as follows:

   a.   August 2014: 4,441 pounds

    b.   September 2014: 14,631 pounds

    c.   October 2014: 9,369 pounds

    d.   November 2014: 13,982 pounds

    e.   December 2014: 18,799 pounds

***Exhibit 15***, Donation Collection Spreadsheet.

78.    Averaging the 61,222 pounds over the five-month period from August through December 2014, when GEF had a NDRS operating in the City, GEF collected on average 12,244 pounds of donated items per month.

79.    A monthly average of 12,244 pounds of donations would equal 146,933 pounds of donations annually.

80.    GEF generally sells the donated items it collects for $.38 per pound.

81.    At this rate, GEF was on track to generate approximately $55,834.54 annually at its NDRS in the City (146,933 pounds multiplied by $.38 per pound).

82.    As a result of the City forcing GEF to remove its NDRS and refusing GEF to operate in the City, GEF has been deprived of $55,834.54 in annual charitable donations.

83.    This injury is ongoing, as the City continues to enforce the Policy and refuses to process any type of application that would allow GEF to operate a NDRS in the City.

## COUNT I
### *Violation of the Right to Free Speech Guaranteed by the First Amendment to the United States Constitution (42 USC § 1983)*

84.     Plaintiff GEF fully restates the allegations in paragraphs 1 through 83.

85.     The First Amendment provides that there shall be no law "abridging the freedom of speech." U.S. CONST. amend. I.

86.     The solicitation of charitable donations including clothing, shoes, and other textiles is a form of speech fully protected by the First Amendment to the United States Constitution. *Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980); *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 213-14 (5th Cir. 2011).

87.     At all times alleged herein, the City has been and will continue to be acting under color of state law and engaging in state action.

88.     GEF, through the operation of NDRSs for the purpose of soliciting and collecting charitable donations, is engaged in constitutionally protected free speech.

89.     The City's Policy inhibits this constitutionally protected free speech by imposing a complete ban on the operation of outdoor, unattended donation bins in the City.

90.     Since the Policy inhibits protected speech, it is subject to strict scrutiny.

91.     The Policy also constitutes a content-based restriction on speech since it specifically targets outdoor, unattended receptacles that solicit and collect charitable donations but does not target other types of unattended receptacles.

92.     Since the Policy is content-based, it is also subject to strict scrutiny.

93.     The Policy is not narrowly tailored to any compelling government interest and is not the least restrictive means of accomplishing any compelling government interest.

94.     In the alternative, the Policy is not narrowly tailored to a substantial government interest, and does not leave open ample alternative channels of communication.

95.     GEF is suffering and will continue to suffer irreparable harm by the City's establishment and enforcement of the Policy.

96.     The City has thus violated the First Amendment's guarantee of free speech through the establishment and enforcement of the Policy.

97.     As a direct result of the City's violation of Plaintiff's First Amendment Free Speech rights, Plaintiff is suffering and will continue to suffer irreparable harm for which there is no adequate remedy of law.

98.     As a direct result of the City's violation of Plaintiff's First Amendment Free Speech rights, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees in an amount in excess of $75,000.00.

### COUNT II
*Violation of the Right to Equal Protection Guaranteed by the Fourteenth Amendment to the United States Constitution (42 USC § 1983)*

99.     Plaintiff GEF restates the allegations in paragraphs 1 through 98 as if fully restated herein.

100.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits unequal treatment by a governmental entity that burdens a fundamental right.

101.   The right to freedom of speech, which includes charitable solicitation via donation bins, is a constitutionally protected fundamental right. *Schaumburg*, 444 U.S. at 633; *Abbott*, 647 F.3d at 213-14.

102.   Governmental actions that affect fundamental rights are subject to strict scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

103.   At all times alleged herein, the City has been and will continue to be acting under color of state law and engaging in state action.

104.   The City's Policy treats operators of outdoor, unattended donation bins unequally with other speakers.

105.   The City's Policy bans all donation bins used for the purpose of charitable solicitation, but the DCC provides an explicit process for "special waste and recyclables haulers" to obtain permits to operate in the City for the purposes of collecting recyclable materials for compensation. ***Ex. 3*** § 24-69.

106.   The Policy is not narrowly tailored to any compelling governmental interest.

107.   Alternatively, the Policy bears no rational relationship to any compelling state interests.

108.   Since the City has no compelling interests and the Policy is not narrowly tailored to achieve its interests, the Policy fails strict scrutiny review.

109.   Alternatively, the Policy fails rational basis review because it is not rationally related to any legitimate government interest.

110.    As such, the Policy violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating against GEF and all other operators of outdoor, unattended donation bins.

111.    As a direct result of the City's violation of Plaintiff's Fourteenth Amendment Equal Protection rights, Plaintiff is suffering and will continue to suffer irreparable harm for which there is no adequate remedy of law.

112.    As a direct result of the City's violation of Plaintiff's Fourteenth Amendment Equal Protection rights, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees in an amount in excess of $75,000.00.

## COUNT III
### *Violation of the Right to Procedural Due Process Guaranteed by the Fourteenth Amendment to the United States Constitution (42 USC § 1983)*

113.    Plaintiff GEF restates the allegations in paragraphs 1 through 112 as if fully rewritten herein.

114.    Plaintiff GEF has a protected property interest in the Permit the City issued in 2014 that allowed it to operate a NDRS in the City. *See Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977).

115.    A governmental entity cannot revoke a previously issued permit or license without provide the permit holder with due process. *Bell v. Burson*, 402 U.S. 535, 539 (1971).

116.     The City's decision to revoke GEF's Permit without providing GEF with notice or an opportunity to be heard violates GEF's right to Procedural Due Process guaranteed by the Fourteenth Amendment.

117.    Further, the City's enactment and enforcement of the Policy without providing GEF with notice or an opportunity to be heard violates GEF's right to Procedural Due Process guaranteed by the Fourteenth Amendment.

118.    Defendant's action in revoking GEF's Permit and the City's enactment and enforcement of the Policy, as alleged herein above, are not supported by or narrowly tailored to further any compelling governmental interest.

119.    As a direct result of the City's violation of Plaintiff's Procedural Due Process rights under the Fourteenth Amendment, as alleged above, Plaintiff is suffering irreparable harm for which there is no adequate remedy of law.

120.    As a direct result of the City's violation of Plaintiff's Procedural Due Process rights under the Fourteenth Amendment, as alleged above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees in an amount in excess of $75,000.00.

### COUNT IV
### *Violation of the Right to Substantive Due Process Guaranteed by the Fourteenth Amendment to the United States Constitution (42 USC § 1983)*

121.    Plaintiff GEF restates the allegations in paragraphs 1 through 120 as if fully rewritten herein.

122.    Plaintiff GEF has a protected property interest in the Permit the City issued in 2014 that allowed it to operate a NDRS in the City. *See Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977).

123.    Defendant arbitrarily and capriciously deprived Plaintiff of its protected property interest when certain City officials decided to unilaterally revoke GEF's Permit that had previously been properly and lawfully issued by other City officials.

124. Defendant arbitrarily and capriciously deprived Plaintiff of its protected property interest when it enacted and enforced the Policy, which completely bars GEF from operating a NDRS in the City.

125. As a direct result of Defendant's violation of Plaintiff's Fourteenth Amendment Substantive Due Process rights, as alleged herein above, Plaintiff is suffering and will continue to suffer irreparable harm for which there is no adequate remedy of law.

126. As a direct result of Defendant's violation of Plaintiff's Fourteenth Amendment Procedural Due Process rights, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees in an amount in excess of $75,000.00.

**COUNT V**
***Violation of Plaintiff's Free Speech Rights***
***Guaranteed by the Constitution of the State of Texas***

127. Plaintiff GEF restates the allegations in paragraphs 1 through 126 as if fully rewritten herein.

128. Article 1, Section 8 of the Texas Constitution provides that "no law shall ever be passed curtailing the liberty of speech[.]" Tex. Const. art. I, § 8.

129. For the reasons described above as to why the City's Policy violates GEF's free speech rights under the First Amendment to the United States Constitution, the Policy also violates GEF's guarantee to the liberty of speech in the Texas Constitution.

130.    As a direct result of the City's violation of the Plaintiff's rights to the liberty of speech under the Texas Constitution, as alleged above, Plaintiff is suffering irreparable harm for which there is no adequate remedy of law.

131.    As a direct result of the City's violation of the Plaintiff's rights to the liberty of speech under the Texas Constitution, as alleged above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees.

**COUNT VI**
*Violation of Plaintiff's Equal Rights*
*Guaranteed by the Constitution of the State of Texas*

132.    Plaintiff GEF restates the allegations in paragraphs 1 through 131 as if fully rewritten herein.

133.    Article 1, Section 3 of the Texas Constitution provides that "[a]ll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3.

134.    For the reasons described above as to why the City's Policy violates GEF's equal protection rights under the Fourteenth Amendment to the United States Constitution, the Policy also violates GEF's equal rights guarantee in the Texas Constitution.

135.    As a direct result of the City's violation of the Plaintiff's equal rights under Article 1, Section 3 of the Texas Constitution, as alleged above, Plaintiff is suffering irreparable harm for which there is no adequate remedy of law.

136.    As a direct result of the City's violation of the Plaintiff's equal rights under Article 1, Section 3 of the Texas Constitution, as alleged above, Plaintiff has

suffered and is entitled to recover compensatory and nominal damages, costs and attorney

fees.

## PRAYER FOR RELIEF

Plaintiff GEF respectfully requests a judgment against Defendant City of Denton

on each and every count alleged herein as follows:

1. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

2. Pursuant to 28 USC § 2201, declare the aforementioned policy of the City to completely ban all outdoor, unattended donation bins in the City to be in violation of the Free Speech Clause of the First Amendment to the United States Constitution and the Texas Constitution, and further declare that Plaintiff is permitted as of right to operate NDRSs in the City as a means of exercising its constitutional right to solicit charitable donations;

3. Pursuant to 28 USC § 2202, Fed. R. Civ. P. 64, 42 USC § 1983, and 42 USC § 2000cc-4, permanently enjoin Defendant from enforcing its policy to completely ban all outdoor, unattended donation bins in the City;

4. Pursuant to 42 USC § 1988, 42 USC § 2000cc-4(d), Fed. R. Civ. P. 54(d), and other applicable law, award Plaintiff its reasonable attorney fees, costs; and

5. Grant such other and further relief, injunctive or otherwise, as the Court deems equitable, just and proper.

Dated: October 18, 2016                    Respectfully Submitted,

                                           **DALTON & TOMICH, PLC**

                                           By:  *Daniel P. Dalton*
                                           Daniel P. Dalton (P 44056)
                                           Attorney for Plaintiff
                                           The Chrylser House
                                           719 Griswold Street, Suite 270
                                           Detroit, MI  48226
                                           Tel. (313) 859-6000
                                           ddalton@daltontomich.com

**Verification**

Pursuant to 28 USC § 1746, I, Kayla Ybarra, declare under penalty of perjury that

I have personal knowledge of matters contained paragraphs 1-2, 7-83 of this Verified

Complaint and that the allegations contained therein are true and accurate.

Executed this 18th day of October, 2016

**Green Education Foundation**

*/s/  Kayla Ybarra*
By: Kayla Ybarra
Its:  National NDRS Director

**REQUEST FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial jury in the action of all issues so triable.

Respectfully Submitted,

**DALTON & TOMICH, PLC**

By:_/s/ Daniel P. Dalton_____
Daniel P. Dalton (P 44056)
Attorney for Plaintiff-*Pro Hac Vice* pending
The Chrysler House
719 Griswold St., Ste. 270
Detroit, MI  48226
Tel: 313.859.6000
Fax: 313.859.8888
ddalton@daltontomich.com